UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DAVID W. ROBERTS, | ) | CASE NO. 1:12 CV 0936 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| GARY CROFT., *et al.*, | ) | & ORDER |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff David W. Roberts filed this action under 42 U.S.C. § 1983 against Ohio

Department of Rehabilitation & Correction ("ODRC") Chief Inspector Gary Croft; ODRC

Bureau of Classification Chief Rob L. Jeffreys; Mansfield Correctional Institution ("MCI")

Warden Terry Tibbals; MCI Deputy Warden of Operations Charles Bradley; MCI Unit Manager

Administrator Marva Allen; MCI Unit Manager John Dunn; MCI Institutional Inspector Sharon

Berry; and Does I through XX.  In the Complaint, Plaintiff alleges retaliation, due process

violations, and supervisory liability.  He seeks declaratory and monetary relief.

1

Plaintiff has also filed a request to proceed *in forma pauperis*. (Doc. 2). That request is granted.

## I. Background

At all times relevant to the instant action, Plaintiff was a state prisoner incarcerated at MCI in Mansfield, Ohio.[1] At some point in January or early February 2011, Plaintiff was interviewed by MCI's librarian Ms. Fry, Case Manager Ms. Taylor and Sgt. Long regarding a potential job classification as a legal clerk in MCI's law library. During this interview, Plaintiff claims he was "forthcoming" about a January 2011 Conduct Report he received at Lake Erie Correctional Institution involving his alleged misuse of a computer. Plaintiff asserts that, despite this Conduct Report, he "satisfied the expectations of the Program/Work Assignment Committee" and was re-classified as a legal clerk on February 15, 2011. Plaintiff further claims he successfully completed a thirty-day probationary period in this position and his supervisor, Ms. Fry, thereafter permitted him to remain a legal clerk. (Doc. 1 at 7).

In May 2011, Plaintiff inquired whether he would be permitted to attend Ashland University ("AU") and maintain his job in the law library. He claims that, on May 11, 2011, he was informed by Ms. Taylor and Unit Secretary Ms. Gall that Defendant Allen had authorized inmates to both attend college and maintain a job classification at MCI. He further claims that Ms. Fry gave permission for him to both attend AU and continue as a legal clerk in MCI's law library. (Doc. 1 at 7).

Plaintiff claims that an incident subsequently occurred in the law library on June 2, 2011

---

[1]     Plaintiff was apparently released from custody subsequent to the filing of his Complaint. On June 28, 2012, he filed a "Notice of Change of Address," listing a residential address in Richmond Heights, Ohio. (Doc. 4).

2

involving Defendant Allen. Specifically, Plaintiff claims that:

> On June 2, 2011, Ms. Allen came into the library while it was full of patrons, wanting to know who the inmate was that had submitted 'form' appeals to Columbus challenging her decision to transfer inmates out of the camp. Ms. Allen was angered by the fact that inmates were fighting for their right not to be transferred. Ms. Allen stated that the form appeals: nature and content no longer held merit and she wanted them to stop. During this tirade, Ms. Allen exhibited disdain for [Plaintiff], with Ms. Fry present and witnessing the same. This was the beginning of Ms. Allen's campaign to annoy and harass [Plaintiff].

(Doc. 1 at 8). Plaintiff asserts that, although Defendant Allen never used Plaintiff's name during this incident, "she specifically directed her comments and attention towards him." (Doc. 1 at 8).

The following week, Plaintiff alleges he "became aware" that inmates would no longer be permitted to maintain their work assignments and attend college. On June 21, 2011, Plaintiff sent a kite to Defendant Dunn asking him to clarify the policy regarding inmates' ability to maintain work assignments and attend college. Plaintiff states Defendant Dunn informed him that "Ms. Allen has been looking into this and she said for now, the answer is no you can't have 2 jobs." (Doc. 1 at 9). Accordingly, Plaintiff thereafter dropped his fall classes at AU. Plaintiff claims, however, that AU inadvertently failed to send a "drop slip" to his Case Manager, Ms. Taylor. (Doc. 1 at 9).

Plaintiff had his Annual Security Review in August 2, 2011. During this review, Ms. Taylor allegedly informed Plaintiff that she "was submitting the committee's decision to lower his security status from 1-B to 1-A." (Doc. 1 at 9). Plaintiff claims Ms. Taylor informed him, however, that Defendant Allen "probably would not approve his downward departure." (Doc. 1 at 9).

On September 28, 2011, Plaintiff assisted another inmate, Nayyohn Johnson, in preparing an Informal Complaint Resolution ("ICR") against Defendants Dunn and Allen regarding his transfer out of MCI. Plaintiff alleges that "Johnson's request for help was based on the fact that he was

3

unfamiliar with the administrative rules and policies associated with Ms. Allen and Mr. Dunn's reasoning for transferring him out of the institution." (Doc.1 at 9). Because Johnson stated he was "unable to file his own complaint and grievance," Plaintiff claims Johnson had "no other reasonable alternative to ensure his access to either the administrative remedies process, or the courts." (Doc. 1 at 9). Plaintiff asserts Defendant Dunn saw inmate Johnson's ICR on the printer and questioned Ms. Fry whether Plaintiff had assisted Johnson. When Ms. Fry confirmed that Plaintiff had assisted inmate Johnson, Plaintiff alleges Defendant Dunn informed Defendant Allen and "[t]hus began the collaborative efforts of Mr. Dunn and Ms. Allen's campaign to annoy, harass, and retaliate against" him. (Doc. 1 at 10).

On October 4, 2011, Defendant Dunn informed Plaintiff he could no longer work in the library because he was classified as a student at AU. Although he was reassigned to the law library after he obtained a "drop slip" from AU, Plaintiff claims "Mr. Dunn's sole purpose for removing [him] from the law library was because [he] had helped inmate Johnson file a grievance against Dunn and his immediate supervisor, Ms. Allen." (Doc. 1 at 11).

Shortly thereafter, on October 17, 2011, Defendant Allen denied Plaintiff a downward departure to security level 1-A and found that "90 days or more outside job placement needed to evaluate before level 1-A recommended. Level 1-B continued." (Doc. 1 at 12). Defendant Tibbals approved Defendant Allen's denial of Plaintiff's downward security departure on the same date. Plaintiff asserts this denial violated ODRC policy, failed to take into consideration a positive Inmate Evaluation Report he had received from Ms. Fry the previous week, and was retaliatory. (Doc. 1 at 11-12).

The following day, October 18, 2011, Ms. Fry informed Plaintiff that Defendant Allen had

4

determined he could no longer work in the law library or use the computers. (Doc. 1 at 12).

Defendant Allen's stated reason for this decision was apparently the January 2011 Conduct Report

Plaintiff had received at Lake Erie Correctional Institution. Plaintiff claims, however, that Defendant

Allen's use of the Conduct Report "was merely a pretext or subterfuge for her actions to annoy,

harass, or retaliate against [Plaintiff] for helping inmate Johnson, and others file appeals, and/or

grievances against her and Mr. Dunn." (Doc. 1 at 13).   Plaintiff also claims Defendant Allen's

decision to remove him from his legal clerk position was contrary to "State Rules and Policies."

(Doc. 1 at 13).  Plaintiff asserts his removal from his legal clerk position "upset the racial balance

of the law library where [Plaintiff] was the only Black person working there." (Doc. 1 at 13).

Plaintiff was subsequently re-classified as a dorm porter, 1st shift. (Doc. 1 at 15).

Plaintiff filed a "written statement" on October 20, 2011 with Defendant Allen regarding the

loss of his legal clerk job classification.  In response, Defendant Allen stated:

> An inmate may be removed from an institutional work program for disciplinary
> reasons if the inmate is convicted of a job related or security related rules
> infraction, pursuant to rules 5120-9-06 to 5120-9-09 of the Administrative Code.
>
> You have a conduct report dated 1/6/2011 [Lake Erie Correctional Center] for
> rule 49 & 61.  You were found guilty and given a job removal from the
> library/law library per investigation initiated by DWO of facility.  You will not
> be placed around a computer or working in the law library while housed at
> [MCI].  Unit manager and job reclass committee will ensure racial balance is
> maintained on job assignments at the camp.
>
> My decision is final.

(Doc. 1 at 14).[2]  Plaintiff asserts Defendant Allen's intention was not only to remove him from his

---

[2]    Plaintiff does not attach copies of any of the Defendants' responses to his written
statements/grievances.  Rather, Plaintiff quotes portions of Defendants' responses in the body of
his Complaint.  The above quotation is taken from Plaintiff's Complaint and does not come from
a copy of Defendant Allen's actual response.

legal clerk position, but to deny him all access to the law library and the courts. (Doc. 1 at 14).

On October 25, 2011, Plaintiff alleges he filed an ICR with Defendant Bradley asserting that Defendant Allen and Dunn's decisions to remove him from his legal clerk position and deny his downward security departure were retaliatory. Plaintiff also filed an "appeal" of Defendant Allen's response to his written statement. Both Plaintiff's ICR and "appeal" were denied. It is unclear from the Complaint, but it appears Plaintiff appealed the denial of his ICR and Defendant Allen's denial of his "written statement" to Defendant Berry. Defendant Berry denied Plaintiff's appeal in all respects. (Doc. 1 at 17-18).

On December 9, 2011, Plaintiff filed appeals with both the ODRC Bureau of Classification and the Chief Inspector's Office. (Doc. 1 at 22, 24). Plaintiff asserts Defendant Jeffreys denied his appeal to the ODRC Bureau of Classification, finding that "[a]fter reviewing all facts in this case, including your conduct report while working in the library at [Lake Erie Correctional Center], this office concurs and affirms the decision of the institution." (Doc. 1 at 22). Defendant Jeffreys also noted that "this office has reviewed the decision to continue you at Level 1B and concurs with the prison that your present classification is proper and within the security guidelines of the Department." (Doc. 1 at 22). With respect to his contemporaneous appeal to the ODRC Chief Inspector's Office, Plaintiff asserts Defendant Croft has failed to respond. (Doc. 1 at 24).

Plaintiff claims generally that the grievance/inmate appeal process is inadequate and an "effort in futility." (Doc. 1 at 16). He asserts that Defendant Allen is "judge, jury, and executioner" and has been granted "unfettered discretion to answer inmate appeals in both the security classification process, as well as their work/program assignments." (Doc. 1 at 16). He complains that any appeal process requiring an inmate to seek redress from Defendant Allen's decisions "is

6

subject to conflicting interests." (Doc. 1 at 16).

Plaintiff also claims that the decisions by Defendants Bradley, Tibbals, Berry, Jeffreys and Croft to deny his grievances demonstrate their "policy and custom of encouraging, or at least not discouraging Ms. Allen and Mr. Dunn's behavior." (Doc. 1 at 16-19, 21). He asserts their failure to adequately investigate and denial of his grievances are indicative of their "implicit authorization, approval, and knowing acquiescence in the unconstitutional conduct of Ms. Allen and her unit staff." (Doc. 1 at 16-20, 21-22, 23). He claims that the "available State postdeprivation remedies used for redressing his security review and retaliation claims were inadequate to redress the wrongs committed by the defendants herein and were efforts in futility; where the conduct complained of was an intentional deprivation– a random and unauthorized act by the defendants, and not established by State procedures." (Doc. 1 at 23).

Plaintiff filed his Complaint on April 18, 2012, asserting two claims for relief. (Doc. 1). In Claim One, Plaintiff asserts that Defendants retaliated against him "for engaging in protected conduct by removing him from his work program assignment as a legal clerk in the law library for helping another inmate file grievances (an adverse action) without any legitimate penological objective, justification, or basis for such action." (Doc. 1 at 34). In Claim Two, Plaintiff claims that Defendants "permitted, encouraged, tolerated, and ratified a pattern of customs and practices, or improperly authorizing the ability to retaliate, annoy, harass and intimidate inmates in its care and custody." (Doc. 1 at 35). As examples of this allegedly unconstitutional behavior, Plaintiff states Defendants (1) ignored State rules and policies regarding downward security departures; (2) encouraged retaliation against Plaintiff by condoning his downward security departure and removal from his legal clerk classification; (3) failed to provide a means for meaningful redress of his

7

grievances; and (4) encouraged misconduct by failing to adequately investigate complaints of wrongdoing by Defendants Allen and Dunn or monitor incidents in which "there is a reasonable likelihood of wrongdoing by Defendants Allen and Dunn." (Doc. 1 at 36). Plaintiff seeks declaratory and monetary relief. (Doc. 1 at 29-33, 37).

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the

---

[3]     An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III. Analysis

#### A.    Official Capacity Claims

In the Complaint, Plaintiff states causes of action against Defendants Croft, Jeffreys, Tibbals, Bradley, Allen, Dunn, Berry and Does I through XX in both their official and individual capacities. (Doc. 1 at 3-7). The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). As Defendants Croft, Jeffreys, Tibbals, Bradley, Allen, Dunn, Berry, and Does I through XX[4] are employed by ODRC, and thus are state employees, Plaintiff's official capacity claims against these Defendants are construed against the State of Ohio.

---

[4]      Although Plaintiff does not identify Does I through XX, he alleges these Doe Defendants "acted in concert with all the named defendants" in the "execution and implementation of the official policy, practice and custom of the [ODRC]." (Doc. 1 at 6). He also asserts that each of the Doe Defendants "was the agent or employee of the remaining defendants, and in doing the acts alleged below, was acting within the scope of his or her agency or employment" with the ODRC. (Doc. 1 at 6-7). Thus, the Court construes Plaintiff's official capacity claims against these Doe Defendants as arising against the State of Ohio.

The Eleventh Amendment[5] bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court. *See Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). There are some exceptions to the immunity recognized by the Eleventh Amendment. A plaintiff may sue a State for damages in federal court when a State expressly consents to suit, or if the case concerns a federal statute that was passed by Congress pursuant to Section 5 of the Fourteenth Amendment and expresses a clear congressional intent to abrogate sovereign immunity. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55 (1996); *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

With respect to the instant case, the State of Ohio has not waived sovereign immunity in federal court. *See Mixon*, 193 F.3d at 397. In addition, the Supreme Court has held that the federal statute invoked in this case, 42 U.S.C. § 1983, was not intended to abrogate the States' Eleventh Amendment immunity. *See Will*, 491 U.S. at 66-67; *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Because the Eleventh Amendment bars suits for monetary damages against state employees sued in their official capacities, Plaintiff's official capacity claims against Defendants Croft, Jeffreys, Tibbals, Bradley, Allen, Dunn, Berry and Does I through XX are therefore dismissed for failure to

---

[5]     The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. CONST., AMEND. XI. The Supreme Court has interpreted this Amendment as granting states broad sovereign immunity from federal suits filed by their own citizens as well as citizens of other states. *See Pennshurst State School & Hospital v. Halderman*, 465 U.S. 89, 120-21 (1984).

state a claim upon which relief may be granted pursuant to § 1915(e).[6]

Furthermore, the Supreme Court has held that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered "persons" for purposes of a § 1983 claim. *See Will*, 491 U.S. at 71. Consequently, even aside from the issue of sovereign immunity under the Eleventh Amendment, Plaintiff fails to state claims for monetary damages against these Defendants pursuant to § 1983.

Accordingly, for all the reasons set forth above, Plaintiff's official capacity claims against all Defendants are dismissed pursuant to § 1915(e).

## B. Individual Capacity Claims for Supervisory Liability

Plaintiff alleges Defendants Croft, Jeffreys, Tibbals, Bradley, and Berry (hereinafter referred to collectively as "Supervisory Defendants") are liable in their individual capacities because they had actual knowledge of Defendant Allen's and Dunn's retaliatory conduct and failed to either investigate, monitor, discipline, or supervise them. He claims the Supervisory Defendants' denial of his grievances and appeals reflects their "policies, practices and customs" of disregarding State rules and policies governing retaliation and "the standards of treatment of inmate security reviews." (Doc. 1 at 36). He further claims, generally, that the Supervisory Defendants "sanctioned and acquiesced in" the alleged constitutional violations at issue. (Doc. 1 at 22).

Liability under § 1983 "must be based on more than *respondeat superior,* or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 199). *See also Miller v. Calhoun County,* 408 F.3d 803, 817 n.3; *Grinter,* 532 F.3d at 575. Thus, to succeed on claims of liability for

---

[6]     Although a claim for prospective injunctive relief may proceed against a state official sued in his/her official capacity, Plaintiff herein does not seek injunctive relief in his Complaint. *See Hafer v. Melo*, 502 U.S. 21, 28 (1991); *Will*, 491 U.S. at 71, n. 10.

failure to supervise, a plaintiff must allege facts showing the defendant "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300. "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing *Hays v. Jefferson County*, 668 F.2d 869, 872-74 (6th Cir. 1982)). *See also Shehee*, 199 F.3d at 300; *Grinter*, 532 F.3d at 575. Or, stated differently, where individual defendants are alleged to be liable based on the acts of others who they supervise, there must be a "direct causal link between the acts of individual [employees] and the supervisory defendants." *Hays*, 668 F.2d at 872. *See also Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 440-41 (6th Cir. 2002) (dismissing claims against individual defendants where there was no causal connection between the action or inaction of the individual defendant and the deprivation of a Constitutional right).

In this regard, the Sixth Circuit has repeatedly explained that the "denial of an administrative grievance or the failure to act" by prison officials does not subject supervisors to liability under § 1983. *See Shehee*, 199 F.3d at 300; *Grinter*, 532 F.3d 576; *Alder v. Corr. Med. Servs.*, 2003 WL 22025373 at * 2 (6th Cir. Aug. 27, 2003) (finding that "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension"). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See, e.g. Shehee*, 199 F.3d at 300; *Martin v. Harvey*, 2001 WL 669983 at * 2 (6th Cir. June 7, 2001) (finding that "the denial of the grievance is not the same as the denial of the request to receive medical care"). Thus, where the only specific allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged constitutional violation. *See*

12

*Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).

The Court rejects Plaintiff's claims as to all the Supervisory Defendants for the following reasons. While Plaintiff claims generally that these Defendants "willfully condoned" and "implicitly authorized, approved, and knowingly acquiesced" in Defendant Allen and Dunn's actions, the Complaint does not set forth any factual allegations suggesting the Supervisory Defendants directly participated in or were otherwise personally involved in the allegedly unconstitutional conduct at issue. Although Defendants Jeffreys, Bradley, and Berry denied Plaintiff's grievances, there is no suggestion in the Complaint that any of these Defendants played a personal role in Allen and Dunn's alleged retaliatory conduct. Nor is there any suggestion of a causal link between the alleged retaliation and any action or inaction by these Supervisory Defendants. Even construing the Complaint liberally, the Court finds there are no factual allegations in the Complaint suggesting that Defendants Jeffreys, Bradley and Berry's involvement in this matter was anything more than a straightforward "denial of administrative grievances" or "failure to act" that does not state a claim for liability under § 1983. *See Grinter*, 532 F.3d at 576.

The allegations against Defendants Tibbals and Croft are even more tenuous. The only allegations against Defendant Tibbals are that he (1) made Defendant Allen "his designee" by appointing her as a Unit Manager Administrator; (2) approved Defendant Allen's denial of Plaintiff's downward security departure; and (3) asked Defendant Bradley to respond to one of Plaintiff's grievances. (Doc. 1 at 12, 21). While Plaintiff claims these actions are "tantamount to his approval of Allen's conduct," the Court disagrees. There is simply no suggestion that Defendant Tibbals "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300.

13

Plaintiff's only allegation against Defendant Croft is that he failed to respond to Plaintiff's December 2011 appeal. (Doc. 1 at 24). Based on this allegation alone, Plaintiff maintains Defendant Croft "has failed to act or acted inadequately because he has actual or imputed knowledge of the past pattern of misconduct of these individuals and knowledge of what is now well-known as a continuing course of Ms. Allen and Mr. Dunn's misconduct." (Doc. 1 at 24). The Court disagrees. As the Sixth Circuit recently explained, "[p]rison officials are not liable under § 1983 for denying or *failing to act on* grievances." *Barnett v. Luttrell*, 2011 WL 831528 at ** 2 (6th Cir. March 10, 2011) (emphasis added). *See also Grinter*, 532 F.3d at 576; *Shehee*, 199 F.3d at 300. There is no suggestion in the Complaint that Defendant Croft had any direct involvement or otherwise personally participated in the alleged constitutional violations at issue.

The Court notes that, while Plaintiff generally alleges throughout the Complaint that the Supervisory Defendants "implicitly authorized, approved or knowingly acquiesced in" Defendant Allen and Dunn's alleged unconstitutional conduct, the Complaint fails to set forth any factual allegations to support this legal conclusion. Although pleadings filed by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). As the Supreme Court has explained, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the elements of a cause of action will not do.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555). It is not sufficient to plead "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Indeed, while legal conclusions can provide the framework of a complaint, "they must be supported by factual allegations." *Id.* at 1950.

14

Here, Plaintiff fails to plead sufficient facts to support his allegations that the Supervisory Defendants implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct at issue. Accordingly, the Court finds Plaintiff has failed to state claims against Defendants Croft, Jeffreys, Tibbals, Bradley and Berry as a matter of law.

Plaintiff's individual capacity claims against the Supervisory Defendants are, therefore, subject to summary dismissal pursuant to § 1915(e). The only remaining claims in this action are Plaintiff's individual capacity claims against Defendants Allen and Dunn for retaliation and due process violations. These claims are discussed below, in turn.

## C. Retaliation

Plaintiff alleges Defendants Allen and Dunn retaliated against him for assisting inmate Nayyohn Johnson prepare an Informal Complaint Resolution challenging his transfer out of MCI. Specifically, Plaintiff contends he was improperly removed from his job as a legal clerk in MCI's law library and denied a downward departure in his security classification in retaliation for providing legal assistance to inmate Johnson.

A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc) (plurality opinion). In this context, a retaliation claim has three elements: (1) the prisoner was engaged in protected conduct; (2) an adverse action was taken against the prisoner that would deter a prisoner of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between the first two elements – i.e. the prisoner's protected conduct motivated, at least in part, the adverse action. *Id.* at 394. *See also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

15

The first element that Plaintiff must establish for his retaliation claim is that he was engaged in conduct protected by the First Amendment. *See Thaddeus-X*, 175 F.3d at 394-95; *Hill*, 630 F.3d at 472. The Sixth Circuit has repeatedly held that "an inmate does not have an independent right to help other prisoners with their legal claims." *Thaddeus-X*, 175 F.3d at 395. *See also Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 2003); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Evans v. Vinson*, 2011 WL 2579779 at ** 7 (6th Cir. June 29, 2011). Rather, "a 'jailhouse lawyer's' right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts [and] prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to the court." *Thaddeus-X*, 175 F.3d at 395. Courts have made clear that not every "uneducated prisoner must be allowed a jailhouse lawyer." *Id.* at 396. However, where the prisoner receiving legal assistance has no other reasonable alternative for pursuing legal redress, "prison officials may not prevent such assistance [from jailhouse lawyers] or retaliate for providing such assistance." *Gibbs*, 10 F.3d at 378. *See also Herron*, 203 F.3d at 415. *See e.g. Thaddeus-X*, 175 F.3d at 395-96 (finding plaintiff jailhouse lawyer was engaged in protected conduct for purposes of First Amendment retaliation claim because the inmate requesting assistance had no knowledge of the law, was in administrative segregation, and could only access the library by requesting books by title).

In the instant case, the Court finds Plaintiff has not sufficiently alleged he was engaged in "protected conduct" for purposes of his First Amendment retaliation claim. In the Complaint, Plaintiff alleges that inmate Johnson was "unfamiliar with the administrative rules and policy mandates associated with Ms. Allen and Mr. Dunn's reasoning for transferring him out of the institution" and, therefore, "unable to file his own complaint or grievance." (Doc. 1 at 9).

16

Unfamiliarity with the law, however, does not in and of itself necessarily satisfy the requirement that the inmate requesting legal assistance has no other reasonable alternative for pursuing his legal claims. In *Thaddeus-X*, for example, the plaintiff jailhouse lawyer was found to have engaged in protected conduct because the inmate requesting assistance not only was ignorant of the law, but was also being held in administrative segregation and could only access legal books by requesting them by title. *Thaddeus-X*, 175 F.3d at 396. Similarly, in *King v. Zamiara*, 2005 WL 2496478 at ** 7 (6th Cir. Oct. 7, 2005), the court found the plaintiff had produced evidence that his assistance was necessary for other inmates to access the courts (and, therefore, "protected conduct") because (1) plaintiff was the designated prisoners' representative to the Warden's Forum and prisoners were required to lodge complaints with him as a prerequisite to accessing the courts; and (2) plaintiff presented evidence that many of the Spanish-speaking prisoners were "functionally illiterate" and would not have been able to obtain meaningful redress of their grievances without assistance from plaintiff. *See also Evans*, 2011 WL 2579779 at ** 7 (allowing plaintiff to amend his complaint to present evidence that inmate had no reasonable alternative to redress his grievance where plaintiff alleged inmate was in segregation and had requested his assistance).

Plaintiff herein alleges only that inmate Johnson was "unfamiliar with the administrative rules and policy mandates associated with Ms. Allen and Mr. Dunn's reasoning for transferring him out of the institution." (Doc. 1 at 9). He does not allege that Johnson was denied access to the legal materials in MCI's law library, or unable due to educational or language barriers to obtain meaningful redress of his grievances. Moreover, although an in-depth understanding of Ohio administrative rules and ODRC policies might have been helpful to inmate Johnson in drafting his Informal Complaint Resolution, there is no suggestion in the Complaint that this type of legal

17

knowledge was necessary for him to pursue his grievance regarding his transfer.  In light of the above, the Court finds Plaintiff does not allege sufficient factual allegations to suggest that inmate Johnson had   no other reasonable alternative to pursue legal redress absent Plaintiff's legal assistance.

Accordingly, Plaintiff's retaliation claim against Defendants Allen and Dunn is dismissed pursuant to § 1915(e).

### D.    Due Process

The Complaint is unclear, but it appears Plaintiff is asserting that Defendants Allen and Dunn violated his procedural due process rights when they (1) removed him from his position as inmate legal clerk, and (2) denied him a downward security departure.  In support of these claims, Plaintiff asserts Defendants Allen and Dunn's decisions on these issue contravened clearly established "State Rules and Policies" regarding inmate job classifications and downward security departures.  (Doc. 1 at 12-13).  Plaintiff also asserts that he was unable to obtain adequate review of Defendant Allen and Dunn's decisions  because MCI's grievance procedure is "woefully inadequate," "an effort in futility," and "subject to conflicting interests."  (Doc. 1 at 16, 17, 23, 26-28).

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that a liberty or property interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, procedural due process analysis involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).  In other words, "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*,

18

2010 WL 395929 at ** 2 (6th Cir. Feb. 4, 2010). *See also Wilkinson*, 545 U.S. at 224.

Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The Due Process Clause, standing alone, confers no liberty interest in freedom from state action taken within the sentence imposed. *Id.* at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485.

The Court finds Plaintiff has failed to state a procedural due process claim with regard to his removal from his legal clerk position at MCI's law library. The Sixth Circuit recently held that an inmate has "no constitutional right to prison employment because the loss of his position does not impose an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Dobbins v. Craycraft*, 2011 WL 1843331 at **2 (6th Cir. May 17, 2011) (quoting *Sandin*, 515 U.S. at 484). *See also Carter v. Tucker*, 2003 WL 21518730 at ** 2 (6th Cir. July 1, 2003) (noting that "[a] prisoner has no constitutional right to prison employment or a particular prison job"). Because Plaintiff does not have a cognizable liberty or property interest in his legal clerk position at MCI, the Court finds his termination did not violate his procedural due process right as a matter of law.

Similarly, the Court finds Plaintiff has failed to state a due process claim with respect to the denial of his downward security departure. The Sixth Circuit has found that "'an increase in security classification . . . does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d

19

571, 577 (6th Cir. 2005) (finding that a prisoner's increase in security classification for his designation as a member of security threat group failed to state a due process claim). *See also Cash v. Reno*, 1997 WL 809982 at * 2 (6th Cir. Dec. 23, 1997); *O'Quinn v. Brown*, 1993 WL 80292 at * 1 (6th Cir. March 22, 1993); *Leonard v. Shelton*, 2011 WL 7144900 at * 1 (S.D. Ohio Dec. 22, 2011); *Umani v. Caruso*, 2008 WL 2216283 at * 11 (E.D. Mich. May 27, 2008). Accordingly, the Court finds Plaintiff does not have a cognizable liberty or property interest in his security classification at MCI and, therefore, the denial of his downward departure did not violate his procedural due process rights.

To the extent Plaintiff claims Defendants violated his procedural due process rights by failing to follow ODRC policies regarding his job re-classification and the denial of his downward security departure,[7] the Court rejects this claim. A prison official's failure to comply with a state administrative rule or policy does not itself rise to the level of a constitutional violation. *See Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *McVeigh v. Bartlett*, 1995 WL 236687 at * 1 (6th Cir. Apr. 21, 1995) (noting that the failure to follow a prison policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).

Finally, the Court rejects Plaintiff's claim that his procedural due process rights were violated

---

[7]     Specifically, Plaintiff claims there is no basis in ODRC Policy to support Defendant Allen's decision that Plaintiff's security level should not be downgraded because "90 days or more outside job placement needed to evaluate before level 1-A recommended." (Doc. 1 at 12). Plaintiff also asserts Defendant Allen and Dunn's decision to remove him from his legal clerk position violated ODRC policy because it (1) failed to take into account the "glowing inmate evaluation" he had received from his supervisor, Ms. Fry; and (2) occurred seven months after he had successfully completed the 30-day probationary period for the legal clerk position. (Doc. 1 at 13).

because the grievance/inmate appeal process at MCI is inadequate, futile, and "subject to conflicting interests." (Doc. 1 at 16, 17, 23, 26-28). The Sixth Circuit has held that there is no inherent constitutional right to an effective prison grievance procedure. *See Argue v. Hofmeyer*, 2003 WL 22495834 at * 2 (6th Cir. Oct. 30, 2003); *Walker v. Dept. of Corrections*, 2005 WL 742743 at **3 (6th Cir. April 1, 2005). Moreover, the mere fact that Plaintiff was unsuccessful in his grievances does not mean that the grievance process itself is constitutionally inadequate. While Plaintiff complains that Defendant Allen has been given "unfettered discretion" to answer inmate appeals, the Complaint indicates that Plaintiff had the ability to, and did in fact, seek recourse from Defendant Allen's decisions via appeals to Defendants Bradley, Berry, and Jeffreys. Thus, the Court finds that the alleged inadequacies in MCI's grievance process are insufficient to demonstrate interference with a "liberty or property interest."

Accordingly, and for all the reasons set forth above, the Court finds Plaintiff has failed to state a claim upon which relief may be granted for violations of his due process rights. Plaintiff's due process claims are, therefore, dismissed pursuant to § 1915(e).

### IV. Conclusion

Plaintiff's request to proceed *in forma pauperis* (Doc. 2) is granted. In addition, and for all the reasons set forth above, this action is dismissed under section 1915(e). The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[8]

IT IS SO ORDERED.

---

[8]    28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."

DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE